Russell, J.
The motion in this case is to set aside the order of reference to John Gr. McIntyre, on the ground that the referee was selected on consent of the attorneys contrary to law and in violation of the rules of the court, and for such further or different rule or order as the court may deem proper. The notice of motion is subscribed, not by the attorney for the plaintiff but by the counsel who appears on the hearing as counsel for the plaintiff, and is fortified by an affidavit of the attorney of record and the plaintiff. The purpose and effect of the motion is to accomplish the result of the delay in the trial of the action until the May circuit in St. Lawrence county, a privilege which was denied by the court at the January circuit upon hearing both sides. It is not claimed that any injustice was done by the order of reference, or that the referee is not in all respects perfectly competent and reliable and entirely indifferent between the parties, but it is claimed that, by consenting to an order of reference in choosing a referee who was acceptable to the other side and the court, the plaintiff could prevent the trial of the action at the January circuit, and thus, by repudiating the action then taken, could obtain a further delay of three months till the May circuit.
This motion was originally noticed the day before the trial was to come off before the referee, to be heard by a- justice of this court in another judicial district adjoining the fourth judicial district, but that justice sent the hearing of the motion to the first special term held by the justice .who presided at the circuit held in St. Lawrence county, in January, at which the motion to continue the case was denied.
The action is brought to obtain a divorce, on the ground that a- *559 common-law marriage was contracted between the plaintiff and the defendant, and the adultery charged upon the defendant consists in the living with the lady whom he openly married on the 10th day of January, 1893, some nine months' before this action was commenced, and such marriage and living is conceded in the answer. The only issue, therefore, to be tried in this action is upon the allegation of the marriage with the plaintiff, contracted by secret common-law contract years before the marriage to Miss Morton. There is, therefore, no possible element of any collusive or fraudulent effort to undo the bonds of the marriage, irksome to both parties, between the plaintiff and the defendant, but both by the pleadings, the statements of counsel and a sharp controversy which has arisen in this action, it is plainly evident that the issue here is whether the plaintiff is an injured woman, or the action is based upon an attempt to blackmail the defendant upon a false claim, by means of a pending harassing litigation, disturbing the defendant and the woman whom he married a year ago, and with whom he lives in the relation of husband and wife.
The action was at issue October 11, 1893, nearly three months before the St. Lawrence circuit, was noticed by the defendant for trial and put upon the calendar. On the first day of the circuit the plaintiff appeared by the counsel who makes this motion, and submitted affidavits of her illness and inability to attend court. The defendant’s counsel challenged the assertion, and time was given to present opposing affidavits. On the liearing of the motion on the eleventh of January, the justice presiding at the circuit was satisfied that any indisposition on the part of the plaintiff was of so light a character that she might at that time, or soon thereafter, be present, and denied the motion, but, in order to give her ample opportunity to be present, announced that the court would, for the trial of this case, continue into the following week, and the case might be set down for the seventeenth of January, for trial by jury, or, if plaintiff preferred, it might go to special term to be tried, or to a reference.
The case was one which evidently should be tried as speedily as possible. If the plaintiff occupied the position she claimed, her rights as the wife of the defendant would not be too soon established. If she did not, the defendant was entitled to have a speedy determination of the pending charge against him, which meant that he had deluded an innocent woman into marrying him, supposing him to be single, and had been guilty of the crime of bigamy, and the court must also take in View the rights of the helpless woman who knew nothing of a secret marriage by common-law contract, and whose reputation and peace of mind were at stake every moment until the determination of the action.
•After the announcement of the decision on the motion to com t.inue, counsel retired, and in the course of the afternoon, came into court; the counsel for the plaintiff, who had appeared that day, and who is the attorney of record, informed the court that he had elected to take a reference to hear and determine, and soon thereafter an order was presented to the court bearing the name of the present referee, who was entirely acceptable to the *560 court, and one whom the court would have designated without any hesitation. The court thereupon directed the order to be entered, and, as appears from the papers, the case was properly noticed for trial before the referee, and no evidence of discontent with the arrangement was presented to the other side until fifteen days later,3 and on the eve of the trial before the referee.
From the affidavit of the plaintiff on this motion it appears that she knew of the reference on the day following the entry of the order, the 12th of January, 1894.' The circuit court in St. Lawrence county was still in session, and an application could then have been made to still try the case by jury on the 17th, five days later, but no objection was made to the reference that came to the notice of the other side until the 26th of January, when the court had adjourned.
In directing the order of reference designating Mr. McIntyre to be referee, the court was not unmindful of rule 73, nor of the construction which has been placed upon it in this judicial department. That rule follows rule 87, in force at the time of the adoption of the Code of Civil Procedure, which provides that the “court' shall in no case order the reference to a referee nominated by either party.” In considering the rule, the general term of the supreme court in the third judicial department held that a reference by consent in a contested case was, if objectionable, merely an irregularity which could be waived by the attorneys. Fullmer. v. Fullmer, 6 Wk. Dig. 42.
This ruling has not, so far as this court has had any knowledge, ever been questioned. It has been always a matter of some doubt whether, for the reasons which will be stated hereafter, rule73'of the present general rules of practice applies to a contested case in an action for divorce. The heading attached to the rule, as it appears in the authorized version of the general rules of practice, published by the reporter of the supreme court, says that it refers to a “reference on default in an action to obtain a divorce or separation—referee, who may be.” It is plain that the purpose of the rule is beneficial in a case where no answer has been interposed genuinely contesting the allegation of fault upon, which is based the request for a dissolution of the marriage tie. It is very proper that vthe court should select, without suggestion, a referee who will not allow the contract of marriage to be set aside unless for legal cause, upon sufficient évidence, and who will conduct the proceedings so as to prevent collusive divorce.
The view that this rule refers to defaults is confirmed by the adoption of the new section of the Code of Civil Procedure, which provides that a reference in divorce shall not be made of course upon consent of parties, and, where the parties do consent, the court may grant or refuse the reference, and where the reference is granted, the court must designate the referee. This section of the Code of Civil Procedure is not the adoption of rule 73, but in addition to it, and means to refer to a class of cases not provided for by that rule. It has been customary, outside of New York and Brooklyn, for orders to be entered upon consent or stipulation of the parties without presentation to the court, and even *561 orders of reference have been made in that way. The new section, referring to contested cases, prevents the entry of such orders by consent, compels application to the court, gives the court discretion to refuse, and allows the court to designate the referee. It nowhere states that in a contested case the court cannot designate a referee from the names suggested by counsel.
The reason of the rule, in cases of default, and of the statute, in cases of contest, is apparent. It is for public policy that marriages shall not lightly be dissolved, and it is certainly a rule of public policy that they shall never be dissolved by collusive consent of parties. That is the object to be accomplished, and the sole reason of the rule. If the case is one in which there can be' no possible danger of this kind, there is no reason for the application of any such rule or statute. Gessante ratione legis cessat et ipsa lex.
Neither the rules of the court nor the statute meant to take away from or mar the j urisdiction of the court. It is for the court to always judge when the application of the rule is pertinent, and that discretion of the court cannot be impugned by a motion, unless it appears that there has been an abuse of discretion.
Eules 61, in regard to foreclosure cases, and 66, as to partition cases, have similar provisions. Can the party who asks for the appointment of a particular person as referee, after proceedings have been taken upon the reference, have the privilege of vacating the order of reference as irregular under these rules ? EuleSS provides that contested motions shall not be noticed or brought to a hearing at a special term held with the circuit except by a general rule of the justices of the district. In case no such rule was made by the justices, would an order be set aside on application of the parties who made the motion which the court permitted to be heard, after a decision thereof ?
It is the reductio ad absurdum that a party should have a standing in court to set aside an order made at his request on the sole ground that the referee named in the order was the very one who was the most acceptable to himself.
This leads to the additional consideration of the estoppel resting upon the plaintiff. Assuming, for the sake of argument, that the attorney and counsel for the plaintiff in this action have made this motion because they are shocked at having apparently transgressed a rule of court, or a provision of the Code of Civil Procedure, and that, actuated by a sense of their duty as practitioners, they have called the attention of the court, by the motion, to this apparent transgression, still, we must assume they are guided by the directions of the plaintiff. We might also assume that the notice of motion, by its general clause, in addition to its specific request, was meant to cover the substitution of another referee to be selected by the court, who in his personnel might be as distasteful as possible to the counsel for the plaintiff, yet this assumption must be abandoned from the attitude taken by the counsel for the plaintiff on the argument of this motion, presumably from instructions by client. He argued orally that the order referring the case to *562 Mr. McIntyre should be set aside on general motives of public policy, illustrated by the rule and the Code; and then, citing Preston v. Morrow, 66 N. Y. 452, argued that no other referee could be substituted, presumably from motives of private policy of the plaintiff. So it appears that the final result of the present proceedings, by a happy coincidence, would, if the plaintiff’s claim is correct, result in precisely the same end as that asked for at the circuit, viz., a delay in the trial of the case until the coming May.
The plaintiff is estopped from effecting such result. We have seen that by the decision of our general term she'could waive the alleged irregularity. She certainly does so by accepting the benefit of the order postponing the cause over the then pending term of the circuit court. A party can even waive a constitutional right. In re Cooper, 93 N. Y. 507.
And even if a matter of public policy is involved, as in the case of the statute forbidding usury, a party may be estopped from establishing a defense by his own declarations that the security is untainted.
It would be a far more dangerous transgression of law to allow a party to promote an end desired by such means as those adopted than to refer an issue as to whether a common-law marriage has been accomplished to a referee to- determine who was entirely acceptable to both sides.
The motion is accordingly denied.